**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MICHELE A.,**

                         **Plaintiff,**

  vs.                                                  **6:21-CV-185**
                                                               **(MAD)**

**KILOLO KIJAKAZI,** *Acting Commissioner of Social Security*,

                        **Defendant.**
_____

**APPEARANCES:**                                        **OF COUNSEL:**

**OFFICE OF PETER W. ANTONOWICZ**      **PETER W. ANTONOWICZ, ESQ.**
148 West Dominick Street
Rome, New York 13440
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **CHRISTINE A. SAAD, ESQ.**
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. BACKGROUND

       On December 28, 2018, Plaintiff applied for Title II Disability Insurance Benefits ("DIB"), alleging a disability onset date of September 4, 2018, due to depression and anxiety, sleep apnea, H. Pylori, chronic fatigue, fibromyalgia, migraines, irritable bowel syndrome ("IBS"), Lyme disease, vertigo, and arthritis. *See* Administrative Transcript ("Tr.") at 212-15. Plaintiff's claim was initially denied and again on reconsideration. *See id.* at 101-31. Plaintiff then requested a hearing before an administrative law judge ("ALJ"). *See id.* at 153-54.

Following a hearing, ALJ Elizabeth W. Koennecke issued a decision on April 9, 2020, finding that Plaintiff was not disabled because she could perform past relevant work. *See id.* at 23. At step one of the Commissioner's sequential disability evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. *See id.* at 18. At step two, the ALJ found that Plaintiff's fibromyalgia is a severe impairment. *See id.* at 18-20. At step three, the ALJ found that Plaintiff's fibromyalgia did not meet or equal the requirements of any listing. *See id.* at 20. The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she can occasionally crouch or crawl. *See id.* at 20-23. At step four, the ALJ found that Plaintiff was capable of performing past relevant work "as a user support analyst and a composite job of personal assistant and bookkeeper." *Id.* at 23. Accordingly, the ALJ found that Plaintiff was not disabled. *See id.* at 23-24. The Appeals Council declined Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. *See id.* at 1-6.

On February 16, 2021, Plaintiff commenced this action challenging the Commissioner's decision. *See* Dkt. No. 1. In his motion for judgment on the pleadings, Plaintiff contends that the ALJ erred in failing to evaluate and address medical evidence submitted to and admitted into the record by the Appeals Council. *See* Dkt. No. 16 at 13-17. Further, Plaintiff argues that the ALJ improperly relied on only a limited portion of the evidence, and disregarded evidence that was favorable to her. *See id.* at 17-18.

Currently before the Court are the parties' cross-motions for judgment on the pleadings. *See* Dkt. Nos. 16 & 20. As set forth below, the Commissioner's decision is affirmed.

## II. DISCUSSION

**A.    Standard of Review**

*1. Substantial Evidence*

A court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied. *See Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S. Ct. 456, 95 L. Ed. 456 (1951)). If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. *See id.* Indeed, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld — even if the court's independent review of the evidence may differ from the Commissioner's. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982); *see also Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citations omitted). However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

*2. Disability Determination — The Five-Step Evaluation Process*

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ must determine whether the claimant engaged in substantial gainful activity during the relevant period. A claimant engaged in substantial gainful activity is not disabled, and is therefore not entitled to benefits. *See id.* §§ 404.1520(b), 416.920(b).

If the claimant has not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. *See id.* §§ 404.1520(c), 416.920(c).

If the claimant is found to suffer from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether, based solely on medical evidence, the impairment or combination of impairments meets or equals an impairment listed in Appendix 1 of the regulations (the "Listings"). *See id.* §§ 404.1520(d), 416.920(d); *see also id.*

Pt. 404, Subpt. P, App. 1. If the claimant's impairment or combination of impairments meets one or more of the Listings, then the claimant is "presumptively disabled." *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether, despite the claimant's severe impairment, he or she has the residual functional capacity ("RFC") to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f). The burden of proof with regard to these first four steps is on the claimant. *See Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citing *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

If it is determined that the claimant cannot perform his or her past relevant work, the burden shifts to the Commissioner for step five. *See Perez*, 77 F.3d at 46 (citing *Carroll*, 705 F.2d at 642). This step requires the ALJ to examine whether the claimant can do any type of work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant retains the RFC to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary. *See Perez*, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." *Poupore*, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

### *3. RFC Determination*

Pursuant to Social Security Ruling ("SSR") 96-8p, an "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p. Additionally, an RFC "does not

represent the least an individual can do despite his or her limitations or restrictions, but the most." *Id.*; *see also* 20 C.F.R. § 416.945(a)(1). In order to determine an RFC, the adjudicator is instructed to base the assessment on "all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3).

Regulations of the Social Security Administration ("SSA") set forth the proper considerations to be used in evaluating medical opinion evidence to establish a claimant's RFC. *See* 20 C.F.R. § 416.927. The Regulations provided that, generally, "we give more weight to the opinion of a source who has examined you than the opinion of a source who has not examined you." 20 C.F.R. § 416.927(c)(1). In order to determine what weight to assign the opinion, the ALJ must consider the following factors: length, nature, and extent of the treating relationship; supportability of the opinion; consistency of the opinion with other evidence in the record; the specialization of the source; and any other factors that support or contradict the opinion. *See id.* § 416.927(c)(2)-(6).

**B.      Application**

   ***1. Medical Evidence Submitted to the Appeals Council***

In her motion, Plaintiff notes that medical evidence was submitted to the Appeals Council that was not previously available at the time of the hearing. *See* Dkt. No. 15 at 13-16. Plaintiff argues that "[t]his evidence was material and relevant as it pertained to the period of time in question before the Administrative Law Judge and contained a medical source statement from a treating physician regarding the plaintiff's functional limitations." *Id.* at 13-14. Plaintiff contends that it was error for the Appeals Council to fail to consider this new evidence and explain any impact this new evidence had on Plaintiff's disability determination. *See id.* at 14-16. Defendant contends that the Appeals Council properly denied Plaintiff's request for review because the new

evidence "did not show a reasonable probability that it would change the outcome of the ALJ's decision, and it does not undermine the substantial evidence supporting the decision." Dkt. No. 20 at 5-8. Additionally, the Commissioner argues that nothing in the regulations or caselaw requires the Appeals Council to consider a medical opinion when it denies review of an ALJ's decision. *See id.* at 8-15.

Plaintiff's primary care doctor, Steven LaGrant, M.D., completed a medical source statement on February 14, 2020, approximately two months before the ALJ issued her decision. *See* Tr. at 66-67. As Defendant correctly notes, Dr. LaGrant placed checkmarks on a preprinted form that is replete with formatting errors and contains little-to-no explanation for the limitations he imposed. *See id.* When asked to explain the cause of the limitations he imposed and to point to objective findings, Dr. LaGrant only wrote "Fibromyalgia (see's [sic] Rheumatologist)." *Id.* at 67.

Certain conditions must be met before the Appeals Council will review an ALJ's decision based on additional evidence. As relevant here, the evidence must be "new, material, and relate[ ] to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). Here, the Appeals Council found that Dr. LaGrant's partially indecipherable, checkmark form, did not show a reasonable probability that it would change the outcome of the decision and this evidence does not undermine the substantial evidence supporting the ALJ's decision. *See* Tr. at 2.

"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s)

will be." 20 C.F.R. § 404.1520c(c)(1).  Although Dr. LaGrant noted Plaintiff's fibromyalgia diagnosis, he did not explain how the limitations he found were supported.  *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *see also Joseph K. v. Comm'r of Soc. Sec.*, No. 5:17-cv-748, 2018 WL 3716780, *6 (N.D.N.Y. Aug. 2, 2018) (finding that the standardized check-box forms without any explanation are "only marginally helpful for purposes of creating a meaning and reviewable factual record") (quotation omitted).  Further, Plaintiff's fibromyalgia diagnosis cannot alone support Dr. LaGrant's opinion because an RFC must be based on the individual's manifested impairments and related symptoms, not merely the existence of certain medical conditions.  *See* 20 C.F.R. § 404.1545; *see also* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, *1 (July 2, 1996) ("Medical impairments and symptoms, including pain, are not intrinsically exertional or nonexertional.  It is the functional limitations or restrictions caused by medical impairments and their related symptoms that are categorized as exertional or nonexertional").

As Defendant correctly notes, Dr. LaGrant's conclusory opinion is also inconsistent with other evidence in the record.  For example, consultative examiner Dr. Lorensen examined Plaintiff in March 2019 and opined that she had no gross limitations sitting, standing, walking, or handling small objects with her hands – a stark contrast to Dr. LaGrant's significant sitting limitation.  *See* Tr. at 66, 740.  The ALJ found Dr. Elke Lorensen's medical source statement "generally persuasive" because it was supported by her findings from examining Plaintiff, and generally consistent with the evidence in the record.  *See id.* at 22.  Similarly, the State agency medical consultants also considered this evidence, and found Plaintiff retained an RFC for light work consistent with the ALJ's assessment.  *See id.* at 103, 106, 114, 119, 125, 127-28, 130.

Accordingly, the Court finds that the Appeals Council correctly determined that there was not a "reasonable probability" that the evidence from Dr. LaGrant would change the ALJ's decision, which was supported by substantial evidence and, therefore, it was not required to review the ALJ's decision. *See Ramsey v. Comm'r of Soc. Sec.*, 830 Fed. Appx. 37, 40 (2d Cir. 2020).

### *2. Consideration of Medical Opinion Under 20 C.F.R. § 404.1520c*

In her motion, Plaintiff appears to argue that the Appeals Council was required to offer a more detailed rationale for declining to review the ALJ's decision in light of Dr. LaGrant's opinion, which contradicts other evidence in the record and refutes findings by the ALJ. *See* Dkt. No. 16 at 13-17. Plaintiff relies on several district court cases that have held that the Appeals Council is required to provide "good reasons" when it denies review when the claimant has presented new evidence from a treating physician that was not presented to the ALJ. *See id.* (citing, *inter alia*, *Farina v. Barnhart*, No. 04-cv-1299, 2005 WL 91308, *5 (E.D.N.Y. Jan. 18, 2005); *Shrack v. Astrue*, 608 F. Supp. 2d 297, 300 (D. Conn. 2009)). In response, Defendant contends that the Appeals Council was under no obligation to explain the persuasiveness of Dr. LaGrant's opinion where, such as here, they merely denied the request for review of a determination as opposed to issued a new decision. *See* Dkt. No. 20 at 12-15 (citing *Jessica W. v. Saul*, No. 5:19-cv-1427, 2021 WL 797069, *9 (N.D.N.Y. Mar. 2, 2021)).

As Defendant notes, Magistrate Judge Peebles thoroughly addressed this issue in *Jessica W.*, which was decided under the old regulations. In *Jessica W.*, Magistrate Judge Peebles explained that the version of the regulations "in effect at the time [the] plaintiff's application was filed provided that the agency 'will always give good reasons in [the] notice of *determination or decision* for the weight [given] to your treating source's medical opinion.'" *Jessica W.*, 2021 WL

797069, at *8 (quoting 20 C.F.R. § 416.927(c)(2)) (emphasis added).  Magistrate Judge Peebles further concluded that the Appeals Council was not required to apply the treating physician rule and provide "good reasons" for its denial of review because

> [u]nder the agency's procedures, an Appeals Council's denial of a plaintiff's request for review is neither a "determination" nor a "decision."  When a plaintiff seeks review by the Appeals Council, that body "may deny, or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to the [ALJ]."  20 C.F.R. § 416.1467. As can be seen, the regulation itself explicitly provides that only when the request to review is granted does the Appeals Council issue a "decision."  *Id.*; *see also* 20 C.F.R. § 416.1481 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision").

*Id.*

Magistrate Judge Peebles also addressed the contrary line of district court cases within this Circuit, holding that the Appeals Council is required to explain its reasons for rejecting a treating physician's opinion when it denies review.  *See id.* at *7.  He surmised that "[t]he apparent genesis of the line of cases ... finding such an obligation appears to be a magistrate judge's report and recommendation in *Shrack v. Astrue*, 608 F. Supp. 2d 297 (D. Conn. 2009)[.]"  *Id.*  In *Shrack*, "[a]lthough the Appeals Council identified the additional new evidence[, which included opinions of a treating physician,] it did not specifically address any of it in its decision denying review, instead stating that '[it] found no reason under [its] rules to review the [ALJ]'s decision.'" *Jessica W.*, 2021 WL 797069, at *8 (quoting *Shrack*, 608 F. Supp. 2d at 302).  "Citing to *Snell v. Apfel*, 177 F.3d 128 (2d Cir. 1999), the magistrate judge [in *Shrack*] issued the sweeping proclamation that 'the treating physician rule applies to the Appeals Council when the new evidence at issue reflects the findings and opinions of a treating physician.'" *Id.* (quoting *Shrack*, 608 F. Supp. 2d at 302).

However, a distinction seemingly overlooked by the court in *Shrack* is that in Snell, "rather than merely denying review of an ALJ decision, the Appeals Council addressed the merits of the matter *sua sponte*, and reversed the decision of the ALJ to grant benefits." *Jessica W.*, 2021 WL 797069, at *8 (citing *Snell*, 177 F.3d at 129-30). In *Snell*, "the Appeals Council proactively considered the record and issued a merits-based decision and, in doing so, was plainly obligated to apply the treating source rule, just as an ALJ must when making an initial determination." *Id.* (citing *Snell*, 177 F.3d at 133). The Appeals Council's actions in *Snell* were different from the actions taken in *Shrack* where the "Appeals Council simply denie[d] review, [and] the focus for a reviewing court [wa]s upon the ALJ's decision, which represents the final determination of the agency...." *Id.* (citing 20 C.F.R. § 416.1481; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).

Magistrate Judge Peebles further relied on a Tenth Circuit decision in explaining the distinction between an Appeals Council denial and decision.[1] In *Vallejo v. Berryhill*, the court held that because the Appeals Council "simply denied review ... it was not required to follow the same rules for considering opinion evidence as the ALJ followed[.]" *Vallejo v. Berryhill*, 849 F.3d 951, 955-56 (10th Cir. 2017). The Tenth Circuit explained that although "an express analysis from the Appeals Council would be helpful to judicial review ... 'nothing in the statutes or regulations' requires the Appeals Council to provide that analysis." *Vallejo*, 849 F.3d at 956 (quoting *Martinez v. Barnhart*, 444 F.3d 1201 (10th Cir. 2006)). Relying on the text of the

---

[1] Magistrate Judge Peebles recognized that "the Second Circuit has offered no guidance regarding th[is] issue, and the court specifically declined to consider the question as recently as 2015." *Jessica W.*, 2021 WL 797069, at *7 (citing *Lesterhuis v. Colvin*, 805 F.3d 83, 89 (2d Cir. 2015) ("[B]ecause we hold that the ALJ's decision was not supported by substantial evidence, we need not consider [the plaintiff's] alternative argument that the Appeals Council has an independent obligation to provide 'good reasons' before declining to give weight to the new, material opinion of a treating physician submitted only to the Appeals Council and not to the ALJ")).

11

regulations and the Tenth Circuit's rationale, Magistrate Judge Peebles concluded that *Shrack* "was wrongly decided," and "when the Appeals Council merely denies a request for review of a determination, it is under no obligations to explain the weight given to a treating source opinion submitted as new evidence following an ALJ's decision." *Jessica W.*, 2021 WL 797069, at *8-9.

In addition to the Tenth Circuit, the First, Fourth, Fifth, Seventh, Eighth, Ninth, and Eleventh Circuits similarly distinguish the articulation requirements for the Appeals Council denying review versus it issuing a decision. *See Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001) ("It is quite true that an Appeals Council decision refusing review has all the hallmarks of a discretionary decision: the Appeals Council need not and often does not give reasons, and the regulations appear to provide the Appeals Council with a great deal of latitude in deciding which cases should be reviewed"); *Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015) ("The regulations do not require the AC to provide a discussion of the newly submitted evidence or give reasons for denying review"); *Damato v. Sullivan*, 945 F.2d 982, 988 (7th Cir. 1991) (holding that "the district court did not abuse its discretion in finding that the Appeals Council may deny review of an administrative law judge's decision without articulating its reasons"); *Skipper v. Astrue*, 471 Fed. Appx. 558, 559 (8th Cir. 2012) (same); *Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996), *superseded by regulation on other grounds as stated in Hudson v. Astrue*, No. 11-CV-0025, 2012 WL 5328786, *4, n.4 (E.D. Wash. Oct. 29, 2012); *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784-85 (11th Cir. 2014) (collecting cases).

In line with this authority, the Court holds that when the Appeals Council merely denies a request for review of a determination, it is under no obligation to explain the weight given to a treating source opinion submitted as new evidence following an ALJ's determination. Moreover, even if the Appeals Council was required to provide such an explanation, such an error would not

warrant remand in the present matter. Even those cases that have followed *Shrack* have noted that "remand is only appropriate where there is a 'reasonable possibility' that this evidence would have influenced the ALJ to decide the disability determination differently." *Leah H. v. Comm'r of Soc. Sec.*, No. 3:20-cv-455, 2021 WL 4033129, *10 (N.D.N.Y. Sept. 3, 2021) (quotation and other citations omitted). As Defendant correctly notes, it is unclear from the record what (if any) off-task limitations Dr. LaGrant included due to the formatting errors on the form. *See* Tr. at 67. At most, when asked to what degree pain, fatigue, and concentration deficits interfered with Plaintiff's ability to stay on task – without further elaboration as to the length or nature of such off-task behavior – Dr. LaGrant appears to have put a checkmark next to "Pain, Fatigue, and Concentration" and circled "Yes indicating that Plaintiff's impairments would likely produce "good days" and "bad days."

      Moreover, even accepting Plaintiff's argument that Dr. LaGrant's opinion reflects that she would be off-task, the record does not support that she would be so limited. For example, the ALJ considered that Plaintiff's attention and concentration were intact and that she was doing "really well" on sulindac for her fibromyalgia pain. *See* Tr. at 19, 21. This is consistent with Plaintiff's function report, in which she checked "No" when asked if she had any problems paying attention. *See id.* at 257. Additionally, the State agency medical consultants considered evidence of Plaintiff's fibromyalgia symptoms and the ALJ relied on their prior administrative medical findings. *See id.* at 22. Moreover, as the ALJ noted, Plaintiff reported performing many activities of daily living despite her impairments. *See* Tr. at 21. In February 2019, Plaintiff noted that she cleans, washes laundry, washes dishes, cooks, shops, and drives. Plaintiff expressed that her hobbies included reading, crafts, watching television, spending time with friends, playing computer games, and listening to local bands play. *See id.* (citing Ex. 3E at 5-7).

The Court also notes that the more significant limitations noted in Dr. LaGrant's medical source statement are not supported by his treatment notes.[2]  Dr. LaGrant became Plaintiff's primary care provider and first examined her on September 17, 2019.  *See* Tr. at 1138-45.  During this visit, Plaintiff did not complain of any limitations noted in the medical source statement and Dr. LaGrant's physical examination of Plaintiff revealed no significant findings.  *See id.*  On October 31, 2019, Plaintiff was again seen by Dr. LaGrant for her annual physical exam.  *See id.* at 1032-38.  Aside from noting Plaintiff's various ailments, including fibromyalgia and obesity, there is no indication in the medical record that Plaintiff is as limited as indicated in the medical source statement.  *See id.*

Finally, Plaintiff was seen by Dr. LaGrant on December 10, 2019.  *See id.* at 1008-14.  During this visit, Plaintiff indicated that "in general she is not doing as well as she was" and further stated that "she has applied for disability and has a hearing coming up and her lawyer suggested she come in for a follow-up." *Id.* at 1008.  Moreover, Plaintiff vaguely stated that she "is limited by her fibromyalgia" but the record does not contain any details about what those limitations are.  *Id.*   Dr. LaGrant noted that Plaintiff was "in no acute distress," that she was able to easily get herself onto the examination table, and that she had a normal gait.  *See* Tr. at 1008-09.  Additionally, Plaintiff stated that she had no new complaints with the symptoms from her fibromyalgia and indicated that her medication had recently been adjusted.  *See id.*

Given the brevity of the treatment relationship between Dr. LaGrant and Plaintiff and the lack of supporting evidence in the record, the Court finds that there is no reason to believe that

---

[2] The Court notes that Dr. LaGrant's medical source statement that was provided to the Appeals Council had significant formatting issues, rendering it largely incomprehensible.  However, Plaintiff provided this Court with a properly formatted medical source statement, which was added to the record on appeal.  *See* Dkt. Nos. 13 & 14.

Dr. LaGrant's wholly unsupported checkmarks on the medical source statement would change the Appeals Council's conclusion.

### 3. Consideration of the Record Evidence

Plaintiff argues that "the ALJ relied on exactly 3 pages of treating source notes out of a total of 888 pages of medical records in the administrative record." Dkt. No. 16 at 17. Plaintiff contends that the "balance of the record documentation by treating sources" demonstrates the severity of her symptoms and limitations. *See id.* As such, Plaintiff claims that the ALJ erred in not considering this additional evidence.

Here, the Court agrees with Defendant that Plaintiff does not accurately portray the ALJ's decision and is asking this Court to re-weigh the evidence. The law is well settled that "[i]t is not the function of this Court to re-weigh evidence on appeal from a decision of the Commissioner, but rather to determine whether substantial evidence supports the Commissioner's decision. *See Walsh on behalf of S.J.W. v. Comm'r of Soc. Sec.*, No. 1:16-cv-1413, 2018 WL 1229827, *5 (N.D.N.Y. Mar. 9, 2018). In reaching her decision, the ALJ assessed Plaintiff's severe impairment and discussed medical records showing that Plaintiff "was being medically managed for fibromyalgia, which included references to the consultative examination, x-ray studies, and medication response. *See* Tr. at 17-21. The ALJ further discussed Plaintiff's activities of daily living and evaluated the medical opinions and prior administrative findings. *See id.* at 23. As such, the ALJ's decision as a whole reflects a broader consideration of the medical evidence than Plaintiff suggests and supports her findings, with which a "reasonable mind" could agree. *See Biestek*, 139 S. Ct. at 1154.

Plaintiff points to a substantial portion of the record that the ALJ did not discuss in her decision. *See* Dkt. No. 16 at 6 (citing Tr. at 480, 500, 536, 561, 580, 609, 621, 626, 678, 720,

794, 820, 847, 867, 896, 934, and 955). These records, however, either simply do not support the substantial limitations Plaintiff now claims, or are from a time period well before the alleged onset date. For example, on December 14, 2018, Plaintiff was seen by Family Nurse Practitioner ("FNP") Carrie Stemmer for a follow-up visit relating to a cough. *See* Tr. at 474. During this visit, Plaintiff reported tenderness in her left shoulder and decreased range of motion. *See id.* at 480. Similarly, on November 27, 2018, Plaintiff was against seen by FNP Stemmer for reported increased depression attributed to breaking up with her boyfriend. *See id.* at 494-96. Plaintiff reported that she had attempted to return to her work the previous day, but was not able to get past security because "met life did not tell HR that she was to return to work yesterday." *Id.* at 495. The record from this visit indicates that Plaintiff reported "left shoulder pain," but noted that she was in no acute distress. *See id.* at 500. The remaining citation to the record are from before the alleged onset date and do not otherwise support the significant limitations Plaintiff now claims. *See, e.g.*, Tr. at 531, 536 (office visit on August 13, 2018, Plaintiff reported pain in her knees, neck, and shoulder); *id.* at 556-57, 561 (office visit on May 25, 2018, for a follow-up visit relating to Plaintiff's Lyme disease, Plaintiff noted that her fibromyalgia symptoms are better now that she has been prescribed gabapentin, but complained of "joint pain, stiffness, muscle weakness, loss of strength and muscle aches"); *id.* at 575, 580 (office visit on April 27, 2018, for dizziness, Plaintiff reported pain in her back and shoulders, stating that the pain was a level two out of ten); *id.* at 604-05, 609 (office visit on January 23, 2018, to address Plaintiff's bilateral knee pain).

    The Second Circuit has made clear that an ALJ is not required to discuss all evidence to show that she considered it. *See Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). "Just as importantly, the mere fact that a specific portion of evidence is not *discussed* in a

decision does not mean that it was not *considered*." *Strange v. Comm'r of Soc. Sec.*, No. 13-cv-527, 2014 WL 4637093, *9 (N.D.N.Y. Sept. 16, 2014) (emphasis in original) (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)).

    Plaintiff argues that the ALJ was required to address the written statements submitted by her ex-husband and son. *See* Dkt. No. 16 at 11-12. However, there is no requirement that an ALJ must discuss third-party testimony in his or her written decision. *See Frederick C. v. Comm'r of Soc. Sec.*, No. 1:19-cv-1078, 2021 WL 466813, *14 (N.D.N.Y. Feb. 9, 2021) (citation omitted); *see also Panella v. Colvin*, No. 3:13-cv-869, 2016 WL 1275644, *5, n.2 (N.D.N.Y. Mar. 31, 2016) ("[T]o the extent that Plaintiff argues that the ALJ erred by not discussing in his written decision the testimony of Plaintiff's family members and others concerning his physical limitations, the Court finds this argument to be without merit") (citing *Bonet ex rel. T.B. v. Colvin*, 523 Fed. Appx. 58, 59 (2d Cir. 2013)). Although Plaintiff argues that the ALJ failed to consider this evidence, she does not explain in any detail how their statements undermine the ALJ's decision. Additionally, the Court notes that, on the first page of the ALJ's decision, the ALJ specifically notes that "[o]n February 24, 2020, two non-medical statements were submitted to the hearing office and admitted into the record. (Exs. 14E; 15E)." Tr. at 15. Finally, even assuming it was error for the ALJ to fail to specifically address these third-party statements in her RFC discussion, any such error was harmless because the written statements echo Plaintiff's own subjective complaints, which the ALJ supportably discounted. *See* Tr. at 21.

    In sum, the ALJ properly considered and addressed the evidence pertaining to each of Plaintiff's impairments, and adequately explained the basis for the limitations assessed. Since the Commissioner's decision is supported by substantial evidence, Plaintiff's complaint must be dismissed.

## III. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying benefits is **AFFIRMED**; and the Court further

**ORDERS** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is **DENIED**; and the Court further

**ORDERS** that the Commissioner's cross-motion for judgment on the pleadings (Dkt. No. 20) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of Court shall enter judgment in the Commissioner's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 12, 2022
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge